# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MARSHALL H. MURDOCK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:12-cv-01244 |
| | ) JUDGE CRENSHAW |
| PATSY BRUCE, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Marshall H. Murdock filed this action pro se and in forma pauperis on November 29, 2012. (Doc. No. 1.) He amended his complaint in April 2013 (Doc. No. 11), and was permitted to further amend in March 2014 (Doc. No. 25) and February 2015 (Doc. No. 62). After motions to dismiss related to insufficient service of process were denied in March 2015 (Doc. No. 78), Murdock filed two motions for summary judgment, both of which were also denied. (Doc. Nos. 100, 115.)

On September 21, 2016, Defendants Patsy Bruce, Robert E. Cooper, Jr., Ronnie Cole, Yusuf Hakeem, Joe Hill, Anthony Johnson, Lisa Jones, Derrick Schofield, and Charles Traughber[1] filed the currently pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 141.) Thereafter, Murdock secured the services of counsel, who entered

---

[1] According to the Complaint, at the time of filing Defendant Traughber was the Administrative Official Chairman for the Tennessee Board of Probation and Parole; Defendant Cooper was Tennessee's Attorney General; Defendant Schofield was Commissioner of the Tennessee Department of Corrections; Defendants Bruce, Hakeem, Cole, Hill, and Jones were Administrative Official Board Members for the Tennessee Board of Probation and Parole; and Defendant Johnson was the Institutional Parole Officer for the Tennessee Board of Probation and Parole. (Doc. No. 1, PageID# 3–5.)

an appearance on September 30, 2016. (Doc. No. 144.) Murdock filed a response to the Defendants' Motion to Dismiss through counsel on October 26, 2016 (Doc. No. 145), to which Defendants replied (Doc. No. 147).

For the reasons given below, Defendants' Motion to Dismiss (Doc. No. 141) will be **GRANTED**.

I.   **Factual Allegations**[2]

On June 19, 2003, Murdock pleaded guilty to attempted first degree murder under Tennessee law and was sentenced to two concurrent prison terms of twenty years with standard release eligibility after serving thirty percent of his sentence. (Doc. No. 1, PageID# 6, 56–57.) Murdock's release eligibility date under this sentence was thus June 19, 2009. (Id. at PageID# 7.) Murdock's case was first reviewed by the Tennessee Board of Parole well before that date, however, at a non-appearance hearing held on October 26, 2006. (Id. at PageID# 6.) The Board denied parole at that hearing on grounds that "release from custody at this time would depreciate the seriousness of the crime of which the offender stands convicted or promote disrespect of the law." (Id.) The Board set Murdock's next hearing for October 2012, three years after his release eligibility date. (Id. at PageID# 6–7.)

Murdock filed a petition for a writ of habeas corpus in this Court on October 17, 2011, challenging the Parole Board's failure to hold a hearing on his 2009 release eligibility date. See Murdock v. Colson, Case No. 3:11-cv-01136. In that petition, Murdock raised many of the same legal arguments he makes in this action: that not setting a 2009 hearing date violates the "contract" of his plea agreement; that the Parole Board acted outside its jurisdiction by

---

[2]   Because the Amended Complaint expressly incorporates "the facts and grounds of his previously filed petition . . . as if set forth verbatim," (Doc. No. 11, PageID# 186) the Court draws these facts from both it and the original Complaint (Doc. No. 1).

"overriding" the judge who imposed his sentence; and that the failure to hold a hearing violates his due process rights and is an ex post facto violation that increases the penalty for his offense. Id. Murdock had already filed two habeas actions, however, and was denied permission to file this successive petition by the Sixth Circuit Court of Appeals. In re Marshall H. Murdock, Sixth Circuit Case No. 12-5762.

The Parole Board held Murdock's second hearing on October 8, 2012. (Id.) The Board denied parole, again on grounds that release would denigrate the seriousness of his offense. (Id.) Murdock was advised of his right to appeal this decision and did so. (Doc. No. 11, PageID# 188, ¶ 11.) That appeal was denied. (Id.) The Board set Murdock's third hearing for October 2017. (Id.) It appears that Murdock was released from custody on January 20, 2017. See Tennessee Felony Offender Information, http://apps.tn.gov/foil-app/search.jsp, last visited March 21, 2017.

Murdock's claims in the present action are summarized as follows:

First, Murdock claims that he was denied a fair parole hearing in October 2012. Specifically, Murdock claims that the Parole Board, through Defendant Bruce, "relied on and introduced inaccurate, false or erroneous information into the parole record." (Doc. No. 1, PageID# 8.) Murdock apparently bases this claim, at least in part, on an allegation that the Board refused to investigate his claim that the State withheld exculpatory evidence regarding disciplinary actions against a detective in his prosecution. (Id. at PageID# 17.) He claims that the Board's decision to deny parole was 'arbitrary and capricious' in that the Board has consistently and unconstitutionally declined parole to plaintiff.[3] (Id. at PageID# 17–18.) Murdock also claims that Bruce "was

---

[3] Although he does not specify on what false evidence the Board relied, Murdock does challenge the Board's use of the LM/CMI risk assessment tool, by which he was rated a "low moderate" security risk. (Doc. No. 1 at PageID# 11.) He argues that the Board cannot rely on a "seriousness of the offence" rationale to deny him parole when this tool rates him as a "low-risk inmate." (Id.)

3

bias[ed], unsympathetic, or prejudiced" and his case was not fairly and impartially tried. (Id. at PageID# 9.) For this reason, Murdock requests review "to determine whether the Board exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily," in violation of his due process protections. (Id. at PageID# 10.)

Second, Murdock claims that the "bargain" of his plea agreement has been violated, in that he has served more than thirty percent of his twenty-year sentence. (Id. at PageID# 9.) Murdock states that the Board "had no concern that [he] has served over ten (10) years and eight (8) months in prison . . . day for day . . . although his sentence was 20 years at 30%." (Id.) Murdock claims that this perceived failure to enforce the terms of his plea agreement is a due process violation. (Id.)

Third, Murdock alleges that the Board "unconstitutionally declined parole to Plaintiff and has set his future action date for parole review to five (5) years 2017, in which the Plaintiff will complete the entire sentence at one-hundred (100%)." (Id. at PageID# 8.) Murdock claims that, by this action, the Board has committed an ex post facto violation by "arbitrarily extend[ing] the Parole Reconsideration Date . . . [to] one-hundred (100%) of his sentence." (Id. at PageID# 12.)

Fourth, Murdock claims that his Fifth Amendment due process rights have been violated because he has been denied a protected liberty interest, to wit, his "legitimate expectations of early release from prison." (Id. at PageID# 13.)

Fifth, Murdock claims an Eighth Amendment violation, asserting that he "had a right to be free from prejudice, bias, fair treatment in parole determinations, illegal and unconstitutional promulgation of rules, regulations, laws, statutes and cruel and unusual punishment while incarcerated." (Id. at PageID# 14.)

4

Finally, Murdock claims a violation of his Fourteenth Amendment due process rights caused by the Parole Board "denying him parole in 2006 without [] sufficient evidence to support its decision that his release would pose an unreasonable risk to public safety and without individualized consideration" and denying him a parole hearing in 2009, in alleged violation of his plea agreement. (Id. at PageID# 15.) Again, Murdock asserts a liberty interest in being considered for parole and given a "full and fair explanation, in writing, of evidence relie[d] upon as a reason for denial of parole." (Id.)

In his Amended Complaint, Murdock makes additional allegations regarding his October 8, 2012 parole hearing. (Doc. No. 11, PageID# 186.) Specifically, Murdock claims that, by no fault of his own, he arrived late to his hearing because an ambulance on the grounds of Riverbend Maximum Security Institution delayed his departure. (Id. at PageID# 187.) When Murdock arrived at the hearing, a bomb threat was made and everyone was required to evacuate. (Id.) Because of the bomb threat, Chaplain Jerry Nail, who was to speak on Murdock's behalf, left without testifying. (Id.) Murdock also states that necessary arrangements to help his wife, who is deaf, testify were not made. (Id. at PageID# 188.) Murdock states that the disrupted hearing was not rescheduled or continued. (Id.) Instead, Murdock was advised that the recommendation would be to deny parole. (Id.) Murdock claims that he was denied a meaningful hearing, in violation of his due process rights. (Id.) Murdock further states that, by again denying parole based on the seriousness of his offense, "[w]hat the parole board has done is to circumvent the intentions of the court system. The parole board is in effect changing the sentences of prisoners because they feel the courts did not give enough prison time. In essence, they have taken it upon themselves to become a sentencing court." (Id. at PageID# 189–90, ¶ 21.)

Murdock asks the Court for a declaration that the Parole Board's actions in his case were "an illegal and unconstitutional promulgation of rules, regulations, laws and/or criteria governing the release of prisoners on parole whom of which have become eligible to be released on parole pursuant to the stipulations and/or conditions as provided in a biding mutual plea agreement contract." (Doc. No. 1 at PageID# 20.) He seeks an injunction preventing such alleged illegal action in the future. (Id.) Murdock also seeks "[c]ompensatory non-economic and economic damages at $100.00 dollars per day from each Defendant from June 19, 2009, until Plaintiff is released from custody of Tennessee Department of Correction," and punitive damages. (Id. at PageID# 52.)

Defendants argue multiple grounds for dismissal of Murdock's claims under Rule 12(b)(6).[4] (Doc. No. 142.)

## II.    Discussion

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim."

---

[4] Defendants argue that Murdock's claims must be dismissed (1) for failure to exhaust administrative remedies; (2) as barred by the statute of limitations, with regard to any acts taking place before November 27, 2011; (3) as not cognizable under § 1983; (4) because Parole Board members are immune from suit as quasi-judicial actors; (5) as to Defendants Schofield and Cooper, because the claims against them are made only on a respondeat superior basis; (6) as to Defendants Johnson, Jones, and Cole, because Murdock does not allege sufficient personal involvement; (7) because this Court does not have jurisdiction to review a sentencing calculation by the Tennessee Department of Corrections; and (8) because all claims against Defendants in their official capacities are barred by the Eleventh Amendment. (Doc. No. 142.) Because Murdock's claims are properly dismissed for the reasons stated in this Memorandum, the Court does not address Defendants' additional arguments.

Fed. R. Civ. P. 8(a)(2). However, the plaintiff must allege sufficient facts to show that the claim is "plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Finally, "[a] document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

### A. Murdock's Claims Regarding the Board's Failure to Set an October 2009 Hearing and Its Failure to Grant Parole in October 2012.

Primary among Defendants' arguments is that what Murdock seeks in this action is not cognizable under § 1983. Instead, Defendants argue, Murdock challenges the fact or duration of his confinement through claims that can only be made in a petition for habeas corpus. (Doc. No. 142, PageID# 756–59.) The Court agrees.

"[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81–82 (2005); Heck v. Humphrey, 512 U.S. 477, 487 (1994) ("[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would

7

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."). Not all challenges to parole determinations are barred under this standard. Indeed, "procedural challenges to parole eligibility hearings will rarely, if ever, 'necessarily imply' the invalidity of a prisoner's conviction or continued confinement" and "there also may exist procedural challenges to parole determination or suitability hearings that will likewise not 'necessarily imply' the invalidity of a prisoner's conviction or continued confinement." Dotson v. Wilkinson, 329 F.3d 463, 470 (6th Cir. 2003), aff'd Wilkinson v. Dotson, 544 U.S. 74 (2005). If a prisoner seeks only "new eligibility review, which at most will speed *consideration* of a new parole application" or "a new parole hearing at which [state] parole authorities may, in their discretion, decline to shorten his prison term," those claims may proceed under § 1983. Wilkinson, 544 U.S. at 82. But if success will require "a judicial determination that necessarily implies the unlawfulness of the State's custody," a prisoner may only bring that claim in habeas. Id. at 81.

All of Murdock's claims in the original Complaint are articulations of a single charge: that the Parole Board's failure to hold an October 2009 parole hearing and failure to grant parole in October 2012 unlawfully usurped the authority of the judge who sentenced him to a twenty-year term with 30% release eligibility. That claim necessarily depends upon a second premise: that, under the terms of his plea agreement, Murdock would not serve his full sentence of twenty years. As Murdock's counsel summarizes Murdock's claims:

> The Plaintiff alleges that since the trial court knew of the "serious[ness] of the offense" factor yet still allowed him to be considered for parole, the Parole Board[']s denial of his parole [in] 2012 based solely upon the "serious[ness] of the offense" was in essence a re-sentencing of the Plaintiff and converted his original sentence from 20 years at 30% to 20 years at 100% sentence. (Doc. 1, Pgs. 8–9). The Plaintiff submits that this denial of parole, based strictly on the "serious[ness] of the offense" factor constitute[s] a re-sentencing by the Parole Board and thus violate[s] the Plaintiff's constitutional rights as follows: (1) Art. I § 10, cl. 1 of the

8

> U.S. Constitution which prohibits states from passing any ex post facto law; (2) the Fifth Amendment, U.S. Constitution which states that persons may not "be deprived of life, liberty, or property, without due process of law"; (3) the Fourteenth Amendment, Section 1, U.S. Constitution, which states that no "State deprive any person of life, liberty, or property, without due process of law" and (4) Art. [I], Section 10, U.S. Constitution which prohibit[s] states from passing any "[] Law impairing the Obligation of Contracts[.]"

(Doc. No. 145, PageID# 777.)

Although Murdock states that he "is not challenging the correctness of the Board's decision," the substance of his allegations and the relief he seeks show otherwise. (Doc. No. 1, PageID# 10.) Murdock believes he has been effectively resentenced by the Parole Board to a longer and unjustified term of confinement, and all of his claims challenge that result. Success on those claims, as he has made them, would necessarily imply the invalidity of his continued incarceration. That Murdock includes a claim for damages of $100.00 per day for every day of his incarceration since June 19, 2009, makes the gravamen of his action abundantly clear. (Id. at PageID# 52.)

Prisoners must "use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement . . . indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson, 544 U.S. at 81. Although Murdock does not explicitly seek the reversal of the Parole Board's decision and his immediate release from custody, neither does he "attack[] only the wrong procedures, not . . . the wrong result." Id. at 80. At the heart of all of Murdock's claims is his belief that he should not serve his full twenty-year sentence.[5] Despite his attempts to frame his claims otherwise, the means and procedures used by the Parole Board are not the target of his grievances; the target is the result of his continued incarceration. Such an indirect challenge to the duration of confinement must be

---

[5] Notably, Murdock did not request a new parole hearing.

9

brought in a habeas corpus action—the avenue Murdock originally pursued—and not a § 1983 civil rights action.

B. **Murdock's Challenge to the October 2012 Hearing.**

In the allegations made in the Amended Complaint, Murdock claims that he was denied a full and fair hearing in October 2012 because he arrived late through no fault of his own, delay from a bomb threat caused one of his witnesses not to testify, and no accommodations were made to allow his hearing-impaired wife to participate. (Doc. No. 11, PageID# 187–88.) Murdock claims that the Parole Board's failure to reset the hearing and allow full participation is a due process violation.

To the extent these allegations challenge only the processes of Murdock's October 2012 parole hearing, they can be made in a § 1983 action. Wilkinson, 544 U.S. at 82. The logical remedy—which Murdock does not request—would be a new hearing at which no result would be necessarily implied. Id. But this claim must fail for a different reason. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Crump v. Lafler, 657 F.3d 393, 397 (6th Cir. 2011) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979)). A constitutionally protected liberty interest arises only if a prisoner has a "'legitimate claim of entitlement to' parole, a claim that can be created only by the operation of state law." Id. (quoting Inmates of Orient Corr. Inst v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir. 1991)). The Sixth Circuit has long recognized that Tennessee inmates have no liberty interest in the possibility of parole. Wright v. Trammell, 810 F.2d 589, 591 (6th Cir. 1987). "Absent a protected interest, a prisoner may seek to enforce statutes or regulations that govern the parole process as a matter of state law, but 'procedural statutes and regulations governing parole do not [alone] create federal procedural due process rights.'" Wershe

10

v. Combs, 763 F.3d 500, 506 (6th Cir. 2014) (quoting Sweeton v. Brown, 27 F.3d 1162, 1164 (6th Cir. 1994)). With no protected liberty interest in parole or a parole hearing, Murdock's due process claim must fail.

**III.  Conclusion**

For these reasons, Defendants' Motion to Dismiss (Doc. No. 141) will be **GRANTED**. An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE